# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETH UCHANSKI,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 17-00843-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for a period of disability and disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

On August 19, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning May 4, 2012. (Administrative Record ("AR") 149-150.) Plaintiff's application was denied initially and on reconsideration. (AR 98-105.) A hearing took place on August 20, 2015

before an Administrative Law Judge ("ALJ") at which Plaintiff, her non-attorney representative, and a vocational expert ("VE") were present. (AR 46-73.)

On November 20, 2015, the ALJ issued a decision finding that Plaintiff suffered from the following severe impairments: musculoligamentous sprain cervical spine; overuse syndrome bilateral upper extremities; tendinitis; lateral epicondylitis; DeQuervain's tendinitis; carpal tunnel syndrome; cervical C6 radiculopathy; small disc bulge; disk osteophyte complex; major depressive disorder, single episode; and personality disorder. (AR 30.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b). (AR 32.) Among the limitations assessed by the ALJ, Plaintiff is precluded from ladders, ropes, or scaffolds; forceful grasping with her bilateral hands; and is limited to non-public, simple, and routine tasks. (AR 32.) Given the foregoing RFC, the ALJ found that Plaintiff was incapable of performing her past relevant work. (AR 38.) However, based upon the testimony of the VE, the ALJ found that Plaintiff's RFC did not prevent her from performing other jobs that exist in significant numbers in the national economy. (AR 39.) Thus, the ALJ concluded that Plaintiff was not disabled at any time from May 4, 2012 to the date of the decision. (AR 40.)

The Appeals Council denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ properly evaluated the medical opinion evidence.
2. Whether the ALJ properly assessed Plaintiff's subjective symptom testimony.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*Id.*) This Court must review the "record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." (*Id.*) Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### 1. Medical opinion evidence

Plaintiff claims that the ALJ erred in rejecting the opinions of examining physicians Dr. Nancy Woods and Dr. Myron Nathan regarding Plaintiff's mental limitations. (Plaintiff's Mem. at 2-7.)

#### a. Dr. Woods

Relying on *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012), Plaintiff argues that because the Appeals Council considered additional evidence (specifically, a mental health evaluation by Dr. Nancy Woods) but denied review, the Court must also consider this additional evidence in its analysis of the ALJ's decision. In *Brewes*, the Ninth Circuit held "that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1159-60, 1162-63.

Here, the record shows no contact by Dr. Woods with Plaintiff before the ALJ's November 2015 decision. (*See* AR 823.) Dr. Woods' first written evaluation

of Plaintiff was a December 6, 2016 questionnaire – more than one year after the ALJ's decision. (*Id.*) Thus, Dr. Woods assessed Plaintiff's mental condition after the relevant period at issue. While Dr. Woods' report states that Plaintiff's symptoms date back to May 4, 2012 (AR 827), it provides no basis for this conclusion. Plaintiff makes no showing as to how Dr. Woods' examination in 2016 could undermine the substantial medical evidence supporting the ALJ's RFC finding as of November 20, 2015, which includes a comprehensive psychological examination of Plaintiff in September 2015 by consultative examining physician Dr. Belen. (AR 815-21.) Moreover, Dr. Woods' assessment of major depressive disorder does not greatly differ from Dr. Nathan's evidence, which the ALJ carefully considered. (*See* AR 35-38.) Finally, the form of Dr. Woods' evaluation is generally brief and conclusionary, which further discounts the weight of this opinion. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that the ALJ did not err when discounting evidence that was "conclusionary in the form of a check-list" and therefore lacking in substantive medical findings).

Thus, even with consideration of Dr. Woods' 2016 report, the Court finds that substantial evidence supports the ALJ's RFC finding, and Dr. Woods' report does provide a basis for reversal of the ALJ's decision.

**b. Dr. Nathan**

An ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. *Carmickle v. Comm'r, of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected with specific and legitimate reasons that are supported by substantial evidence in the record. (*Id.*) The ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citations and internal quotation marks omitted). An

ALJ errs if he rejects a medical opinion or gives it little weight "while doing nothing more than ignoring it, asserting without explanation that another opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13 (citations omitted).

Dr. Nathan first examined Plaintiff in January 2014. (AR 619.) He conducted a workers' compensation psychiatric evaluation and indicated that Plaintiff was temporarily totally disabled from a psychiatric standpoint. (AR 649.) In May 2014, Dr. Nathan conducted another psychiatric evaluation and diagnosed Plaintiff with major depressive disorder, single episode; sibling relational problem; and specific personality traits or disorders. (AR 579-80.) At the appointment, Plaintiff was neatly groomed and dressed. (AR 568.) While her mood was depressed and tearful, there was no evidence of thought disorder or suicidal ideations, and her judgment appeared satisfactory. (AR 568.) Dr. Nathan reported that Plaintiff appeared to be socially isolated, spent most of her time in her room, and did not experience much interest in her daily activities. (AR 583.) Based on his assessment of her emotional state, Dr. Nathan found that Plaintiff was "precluded from emotional stress." (AR 584.)[1] If Plaintiff received treatment, Dr. Nathan found that she would remain "temporarily totally disabled," but without treatment, she would be "permanent and stationary" or permanently disabled. (AR 584, 589.)

In December 2014, Dr. Nathan conducted a second workers' compensation psychiatric evaluation and reported that Plaintiff claimed she "can't handle stress," cried all day, and most of her daily activities were spent in her bedroom. (AR 691, 709-10.) As Plaintiff had not received treatment, Dr. Nathan concluded that she had reached her maximum medical improvement. (AR 711.) Plaintiff failed to keep her scheduled appointment for a psychiatric reevaluation in May 2015, and Dr. Nathan affirmed his prior impressions. (AR 782.)

---

[1] The ALJ misattributed this statement to Dr. Mark A. Mandel. (AR 38.)

5

In assessing Plaintiff's mental RFC, the ALJ explicitly addressed Dr. Nathan's psychiatric evaluations, including the conclusion that Plaintiff was temporarily totally disabled, permanent and stationary, or permanently disabled. (AR 35, 37, 38.) Notwithstanding the different meaning of terms of art used in workers' compensation cases, an ALJ must translate these terms of art into the corresponding Social Security terminology in order to assess the medical opinion. *See Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105-06 (C.D. Cal. 2002). Here, the ALJ defined the workers' compensation terms and found them to have more lenient standards than the Social Security law requires. (AR 37.) For example, the ALJ defined "permanently disabled" in the workers' compensation context as a person who is unable to complete the tasks of his normal work. (AR 37.) In contrast, a claimant is disabled in the Social Security context if the claimant does not have the RFC to perform the requirements of her past relevant work *or* any other work considering age, education, and work experience. (AR 30.) Thus, the ALJ did not merely dismiss Dr. Nathan's findings as inapplicable in this context but noted that, "[t]he objective clinical and diagnostic evidence used by the doctor to come to [his] conclusion and included in the doctor's reports has been considered." (AR 37.) The ALJ also provided a lengthy summary of Dr. Nathan's observations regarding Plaintiff's mental health. (AR 35.)

The ALJ gave little weight to Dr. Nathan's contradicted opinion that Plaintiff was "precluded from emotional stress" because that opinion was "too broad and inconsistent with claimant's mental health record." (AR 38.) Generally, a physician's opinion regarding a claimant's level of impairment may be given less weight if it is inconsistent with other substantial evidence, so long as the ALJ provides specific and legitimate reasons for that conclusion. *See Batson*, 359 F.3d at 1195 (an ALJ may discredit treating physician's opinion that is unsupported by the record or objective medical findings). In the present case, the ALJ did not provide a boilerplate statement, but instead gave clear examples of evidence that contradicts Dr. Nathan's opinion. Specifically, the ALJ noted that Plaintiff was able to testify on her own

behalf and adhere to proper hearing room decorum. (AR 38.) The ALJ also pointed to Plaintiff's ability to obtain treatment for herself, answer questions from medical professionals, adequately groom herself, and take care of her basic needs during the day – all of which demonstrated that Plaintiff's emotional limitations were not as severe as Dr. Nathan opined. (AR 38.) Moreover, the ALJ did not simply dismiss Dr. Nathan's findings and declare Plaintiff unaffected by stress. Rather, after considering the differing mental assessments, the ALJ found Plaintiff to have "moderate difficulty" in handling the usual stresses of gainful employment and accommodated that by limiting Plaintiff to "non-public, simple and routine tasks." (AR 32, 38.)

For these reasons, the Court concludes that the ALJ properly addressed the conflicting clinical evidence, and provided specific and legitimate reasons for the weight given to Dr. Nathan's opinion.

### 2. Plaintiff's subjective complaints

Where a claimant has produced objective medical evidence of an impairment and there is no affirmative evidence of malingering, an ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the symptoms. *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

The ALJ may consider a variety of factors ordinarily used in assessing credibility, including the claimant's treatment history or unexplained failure to seek treatment, the claimant's daily activities, exaggerated complaints, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221, 1227 (9th Cir.

2009); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may also consider conflicts between a claimant's testimony and the objective medical evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *see generally* 20 C.F.R. § 404.1529 (a) (explaining how pain and other symptoms are evaluated).

Here, the ALJ accurately summarized Plaintiff's allegations regarding her pain and symptoms as follows:

> The claimant testified she was unable to work because of work place injuries to her hands, elbows, neck, and back. She indicated she needed the assistance of her daughters with meals, cleaning, and laundry. The claimant noted was unable to hold more than a gallon of milk and often dropped items; had pressure and pain in her neck; and had difficulty with her low back into her legs. She stated she was able to walk to her mailbox and back. Regarding her mental health, the claimant alleged depression, poor memory, and did not like talking with others. She reported she was not receiving treatment for her mental health. The claimant testified she lived with her adult son. She listed her daily activities: getting up, taking her medications, isolating herself in her room, and warming up meals and eating. She stated she was able to shower, watch television, and listen to the radio. The claimant acknowledged she was able to occasionally run errands.

(AR 33; *see also* AR 49-52, 54-64.)

After considering the record evidence, the ALJ found that Plaintiff's claims "concerning the intensity, persistence, and limiting effects of her symptoms are less than fully credible." (AR 33.) The ALJ provided several reasons in support of this determination. First, the ALJ discredited Plaintiff's complaints because he found them to be inconsistent with the objective medical evidence. (AR 33.) Although lack of objective medical evidence cannot form the sole basis of a credibility determination, it is a valid factor for the ALJ to consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ accurately summarized the objective medical evidence and concluded that it did not support the severity of Plaintiff's allegations. (AR 33.) In particular, the ALJ noted normal grip strength in the left

and only 10% grip strength loss on the right, no sensory loss in the elbow, and good strength with some decreased motion in the shoulders. (AR 33.) The ALJ also noted that Plaintiff's low GAF scores of 42 and 47, which were largely based on Plaintiff's subjective complaints, were inconsistent with Plaintiff's mental health records. (AR 36.) For example, mental health evaluations indicated that Plaintiff's thought process and content were normal, her grooming was normal, and she was able to remember items after a delay and do serial sevens and threes.[2] (AR 36.) In light of the foregoing record, substantial evidence supported the ALJ's finding on the lack of objective medical evidence to support Plaintiff's subjective complaints.

Second, the ALJ noted that doctors had reported exaggerations by Plaintiff concerning her limitations and symptoms. (AR 33, 35.) For instance, the ALJ referred to Dr. Mandel's observation that while Plaintiff complained of pain all of the time, the pain should more accurately be described as "slight and intermittent" and perhaps "slight to moderate with extensive use." (AR 33, 717.) In addition, the ALJ discussed Dr. Nathan' statement that Plaintiff had "magnified and exaggerated her responses" during the mental health assessment. (AR 35, 575.) Given this evidence, the ALJ properly considered Plaintiff's exaggerated responses as a clear and convincing reason for his adverse credibility finding. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (exaggeration was a clear and convincing basis for finding adverse credibility where a claimant was "uncooperative during cognitive testing" but "much better when giving reasons for being unable to work"); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's finding that a claimant was not credible because the claimant's "complaints of pain and fatigue were exaggerated").

Third, the ALJ referred to Plaintiff's answers in a pain questionnaire, where Plaintiff indicated that taking medication alleviated her pain symptoms. (AR 33, 50.)

---

[2] Both test mental functioning. (AR 818.)

The fact that Plaintiff's pain was addressed by medication alone (without surgery or injections) provided another valid basis for discounting Plaintiff's credibility. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) ("routine or conservative" treatment is a clear and convincing reason for which an ALJ may reject a claimant's testimony about symptom severity).

Finally, the ALJ found that Plaintiff was not receiving treatment for her alleged mental impairments. (AR 33.) However, Plaintiff also testified that she had attempted to receive treatment for her mental impairment, but her insurance failed to provide coverage. (AR 56-57.) Given this reason for Plaintiff's lack of mental health treatment, the ALJ could not properly rely on that lack of treatment as a valid basis for the credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) (an ALJ may not rely on a claimant's "failure to take pain medication where evidence suggests that the claimant had a good reason for not taking medication"); 20 C.F.R. § 404.1530. Nevertheless, the error in this regard was harmless because of the other clear and convincing reasons discussed above that support the ALJ's adverse credibility finding. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

IT IS THEREFORE ORDERED that Judgment be rendered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 6/19/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE